IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KIMBERLY MOHLER, | ) CIVIL NO. 13-00611 JMS-BMK |
| | ) |
| Plaintiff, | ) ORDER DENYING DEFENDANT |
| | ) KIPU RANCH ADVENTURES, |
| vs. | ) LLC'S MOTION FOR SUMMARY |
| | ) JUDGMENT ON ALL CLAIMS, |
| KIPU RANCH ADVENTURES, LLC; | ) DOC. NO. 42 |
| and DOES 1 through 100 inclusive, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER DENYING DEFENDANT KIPU RANCH ADVENTURES, LLC'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS, DOC. NO. 42

## I. INTRODUCTION

On November 13, 2013, Plaintiff Kimberly Mohler ("Plaintiff") filed this action alleging state law claims for negligence, failure to warn, and premises liability against Defendant Kipu Ranch Adventures, LLC ("Defendant") stemming from injuries she sustained while operating an all-terrain vehicle ("ATV") during a paid scenic tour offered by Defendant at its ranch.

Currently before the court is Defendant's Motion for Summary Judgment, arguing that (1) Plaintiff's claims are barred by the Acknowledgment of Risk and Release of Liability form Plaintiff signed prior to taking the ATV tour; (2) Plaintiff's claims are barred by Hawaii's Recreational Use Statute, Hawaii

Revised Statutes ("HRS") Ch. 520, which affords landowners immunity from negligence liability where the property is used for "recreational purposes;" and (3) Plaintiff's premises liability claim fails because the ATV trail did not present an unreasonable risk of harm. Based on the following, the court DENIES Defendant's Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

On November 15, 2011, Plaintiff traveled to Kauai with her partner Deborah Barnes ("Barnes") for a vacation. *See* Doc. No. 42-9, Def.'s Ex. 1, at 27. Plaintiff thought that an ATV trip "sounded interesting and fun and something different that [they] hadn't done before," *id.* at 29, and as a result, on November 17, 2011, Plaintiff purchased a guided ATV tour from Defendant, who was engaged in a recreation tour business. Doc. No. 43, Def.'s Concise Statement of Fact ("CSF") ¶¶ 1-2.[1]

#### 1. *Plaintiff's Release*

Plaintiff arrived for the 1:30 p.m. tour between 1:00 p.m. and 1:15 p.m. Doc. No. 42-9, Def.'s Ex. 1 at 42. Plaintiff checked in, and was provided an

---

[1] Where the parties do not dispute a particular fact, the court cites directly to Defendant's CSF.

Acknowledgment of Risk and Release of Liability form (the "Release"), *id.* at 43-

44, which Plaintiff and Barnes both signed.  Doc. No. 43, Def.'s CSF ¶¶ 3-4.  The

Release provides, in relevant part:

> I hereby RELEASE AND DISCHARGE Kipu
> Ranch Adventures, L.L.C., their guides, agents, and
> employees, and William Hyde Rice, Limited, a Hawaii
> corporation, from any and all liability, claims, demands,
> or causes of action that I may have for injuries or
> damages arising out of my participation in four-wheel all
> terrain vehicles, guided routes, by Kipu Ranch
> Adventures, L.L.C..  I understand that this release of
> liability applies to any accident or occurrence of any
> kind which could occur as a result of using or riding on
> equipment or vehicles furnished by Kipu Ranch
> Adventures, L.L.C., whether or not Kipu Ranch
> Adventures, L.L.C., including it's [sic] agents and
> employees are negligent.
>
> I further acknowledge that full disclosure of all
> inherent risks associated with this guided tour have been
> disclosed to me.  I hereby knowingly and willingly
> ASSUME ALL RISKS associated with this recreational
> activity.
>
> I further declare . . . that I am voluntarily assuming
> all risks, including but not limited to . . . my inability to
> properly control any equipment furnished to me.
> I understand and acknowledge that four-wheel all terrain
> vehicle [sic], or activities have inherent dangers that no
> amount of care, caution, instruction, or expertise can
> eliminate, and I EXPRESSLY AND VOLUNTARILY
> ASSUME ALL RISK OF INJURY OR HARM WHILE
> PARTICIPATING IN THIS RECREATIONAL
> ACTIVITY.
>
> I further agree that I WILL NOT SUE OR MAKE
> A CLAIM FOR NEGLIGENCE AGAINST KIPU

RANCH ADVENTURES, LLC, OR WILLIAM HYDE
RICE, LIMITED, FOR DAMAGES OR OTHER
LOSSES SUSTAINED AS A RESULT OF MY
PARTICIPATION IN THIS RECREATIONAL
ACTIVITY. I further agree to INDEMNIFY AND
HOLD THE RELEASED PARTIES HARMLESS from
all claims, judgment and costs, including attorney's fees,
incurred in connection with an action for negligence
brought as a result of my participation in this recreational
activity.
. . .
I have read this agreement and release of liability,
understand it's [sic] contents, and freely sign of my own
free will.

Doc. No. 42-5, Def.'s Ex. A.

According to Plaintiff, she did not read the Release, although she

signed and initialed it. Doc. No. 42-9, Def.'s Ex. 1 at 101. Plaintiff, who has a

Bachelor's degree in physical education and a Master's degree in organizational

development, has signed waivers of liability on previous occasions and has a

general custom and practice to not read and/or read thoroughly waivers she is

given. Doc. No. 43, Def.'s CSF ¶¶ 11, 13-14.

**2.     *Information Provided to Plaintiff Regarding the ATV***

After signing the Release, Plaintiff and Barnes proceeded to a small

building where they were fitted for helmets and goggles, and then went to an

outside arena for a fifteen-minute orientation. Doc. No. 42-9, Def.'s Ex. 1 at 45-

47, 56. In total, there were eight customers and two guides. *Id.* at 46. The lead

guide, Rebekah Albano ("Albano"), explained that the faster the group is able to ride their ATVs, the more scenery they would be able to see. *Id.* at 47. The customers were then led to their vehicles, which for Plaintiff and Barnes was a two-person Outlander Max 400 ATV. *Id.* at 48-49; Doc. No. 47-5, Pl.'s Ex. 3.

Plaintiff was given instructions on how to start, steer, accelerate, and brake the ATV. Doc. No. 42-9, Def.'s Ex. 1 at 50-52. Plaintiff then drove the ATV twice around the perimeter of the arena to familiarize herself with the ATV. *Id.* at 49-50. At the time, Plaintiff thought that driving the ATV was more challenging that she thought it would be, but was not uncomfortable. *Id*. at 53.

After all participants finished their laps, the instructors reiterated that they should keep a safe speed and safe distance from one another. *Id.* at 55.

### 3. *Information Not Provided to Plaintiff*

Albano never warned Plaintiff that, as provided in the Operator's Guide for Plaintiff's ATV, riding an ATV with a passenger may affect vehicle handling. Doc. No. 47-5, Pl.'s Ex. 3 at 9 (warning that an ATV handles differently with a passenger). Rather, Albano gave the same training to all customers regardless of whether they were riding single or with a passenger. Doc. No. 47-4, Pl.'s Ex. 2 at 50; Doc. No. 47-6, Pl.'s Ex. 4 at 94-95, 130-32 (explaining that customers are not warned that riding with a passenger poses greater risks).

As for maneuvering down hills, Plaintiff was never told, as provided in the Operator's Guide, that "a special technique is required when braking as you go down a hill," requiring both the operator and passenger to shift their weight backward. *See* Doc. No. 47-5, Pl.'s Ex. 3 at 19, 21. Nor was Plaintiff instructed, as provided in the Operator's Guide, that in riding downhill, the operator should "[a]pply the brake gradually to prevent skidding," and "not 'coast' down the slope using solely engine compression or in neutral gear." *Id.* at 36. The Operator's Guide further warns that "[d]ecelerating while negotiating a slippery downhill slope could 'toboggan' the vehicle. Maintain steady speed and/or accelerate slightly to regain control."[2] *Id.* at 30.

Defendant decided not to provide the Operator's Guide to customers or have them watch the safety video provided with the ATV because many of the warnings provided therein were inapplicable to a guided tour, and it would not assist in creating a safe environment for teaching people how to safely operate the ATVs on a tour. Doc. No. 47-6, Pl.'s Ex. 4 at 67-68. Defendant instead provided tour guides a written safety summary, which Defendant asserts is "basically a

---

[2] The only information Plaintiff was provided regarding downhill navigation was when the tour reached a downslope into a gulch and the guides instructed each customer down the embankment one at a time. Doc. No. 42-9, Def.'s Ex. 1 at 66. The guides told customers not to "give it any gas, use your brake to control your speed, but if you use your brake too much, I'm going to be laughing and making fun of you." *Id.* at 66.

summary of the owner's manual." *Id.* at 110-11; Doc. No. 47-7, Pl.'s Ex. 5 (summary provided to guides). This summary instructs, among other things, to "[n]ever carry passengers, as this alters the handling characteristics dangerously." Doc. No. 47-7, Pl.'s Ex. 5. Albano does not recall receiving any such written policies. Doc. No. 47-4, Pl.'s Ex. 2 at 25.

### 4. *Plaintiff's Accident*

During the tour, Albano was the lead vehicle, and Plaintiff, who was the first customer in the line, kept Albano in her sight. Doc. No. 42-9, Def.'s Ex. 1 at 69-70. After traversing various areas on Defendant's ranch, the ATV tour entered an area where the trail widened, was covered in gravel, sloped downward, and led to a right turn. Doc. No. 42-9, Def.'s Ex. 1 at 32; Doc. No. 47-4, Def.'s Ex. 2 at 74; Doc. No. 47-3, Pl.'s Ex. 1 at 74. Albano picked up speed in this area, and as a result, Plaintiff also picked up speed in trying to keep up with her. Doc. No. 42-9, Def.'s Ex. 1 at 33. Plaintiff "fishtailed" once and reduced her speed by not throttling as much (as opposed to braking), and then accelerated again to catch up with Albano. *Id.* at 33-35, 80-81. Plaintiff then fishtailed again, went off the trail, hit a tree, and landed with the ATV on her. *Id.* at 39, 78-81. While Plaintiff was on the ground, she heard Albano say something to the effect of "I must have been going to[o] fast. I knew they were just beginners. I shouldn't have been

going so fast." *Id.* at 95. Plaintiff suffered, among other injuries, a punctured lung an multiple rib fractures. *Id.* at 112-112.

Defendant estimates that three to five injuries per year occur on the property, with three-quarters of them ATV-related. Doc. No. 47-6, Pl.'s Ex. 4 at 141. Defendant is not aware, however, of any other injuries occurring in the area of Plaintiff's accident. *See* Doc. No. 42-4, Atone Teves Decl. ¶ 8.

**B.     Procedural Background**

Plaintiff filed her Complaint on November 13, 2013, Doc. No. 1, and filed an Amended Complaint on December 5, 2013. Doc. No. 9. The Amended Complaint alleges claims for negligence, failure to warn, and premises liability.

On October 7, 2014, Defendant filed its Motion for Summary Judgment. Doc. No. 42. Plaintiff filed an Opposition on October 27, 2014, Doc. No. 46 (refiled as directed by the Clerk of Court on October 28, 2014 at Doc. No. 47). Defendant filed a Reply on November 3, 2014. Doc. No. 48. Pursuant to Local Rule 7.2(d), the court determines the Motion for Summary Judgment without a hearing.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. ANALYSIS

Defendant argues that summary judgment should be granted on all of Plaintiff's claims for three reasons. The court addresses each argument in turn.

## A. Whether Plaintiff Waived Her Claims by Signing the Release

Defendant argues that pursuant to *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 141 P.3d 427 (2006), Plaintiff's Release constitutes a valid waiver of any negligence claims she has against Defendant stemming from the ATV tour. *See* Doc. No. 42-3, Def.'s Mot. at 6-10. Although *Courbat* outlines the basic legal framework on the validity of waivers, its holding does not foreclose Plaintiff's claims.

In *Courbat*, the plaintiffs brought claims for negligence and violation of HRS § 480-2 when one of them was kicked by a horse during a commercial horseback ride at the defendant's ranch. The plaintiffs had signed waiver forms, and their § 480-2 claim sought rescission of these waivers. *Courbat* held that genuine issues of material fact existed as to the § 480-2 claim, and therefore it was a question of fact whether the waivers could be rescinded. 111 Haw. at 263, 141 P.3d at 436. To the extent the fact-finder on remand determined that the waivers were not rescinded, however, *Courbat* explained that the waivers were valid in all other respects. *Id.* at 264, 141 P.3d at 437.

In particular, *Courbat* outlined the legal framework regarding the validity of waivers as follows:

> "The general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." *Leong v. Kaiser Found. Hosps.*, 71 Haw. 240, 245, 788 P.2d 164, 168 (1990) [other citations omitted]. Furthermore, "'[p]arties are permitted to make exculpatory contracts so long as they are knowingly and willingly made and free from fraud. No public policy exists to prevent such contracts.'" *Fujimoto v. Au*, 95 Haw. 116, 156, 19 P.3d 699, 739 (2001) (some brackets omitted) (quoting *Gen. Bargain Ctr. v. Am. Alarm Co., Inc.*, 430 N.E.2d 407, 411-12 (Ind. Ct. App. 1982)). "[S]uch bargains are not favored, however, and, if possible, bargains are construed not to confer this immunity." *Fujimoto*, 95 Haw. at 155, 19 P.3d at 738.

> Therefore, as a general rule, "'[e]xculpatory clauses will
> be held void if the agreement is (1) violative of a statute,
> (2) contrary to a substantial public interest, or (3) gained
> through inequality of bargaining power.'" 95 Haw. at
> 156, 19 P.3d at 739 (quoting *Andrews v. Fitzgerald*, 823
> F. Supp. 356, 378 (M.D.N.C. 1993)).

*Id.* at 264-65, 141 P.3d at 437-38. *Courbat* explained that the plaintiffs' waivers

were valid because none of three circumstances voiding a waiver applied -- the

plaintiffs did not allege that the waiver violated a statute; the public interest was

not at stake because "recreational activity tours are not generally suitable to public

regulation . . . nor of great importance to the public;" and adhesion contracts in the

context of recreational activity are not unconscionable but rather generally "freely

undertaken for pleasure." *Id.* at 265-66, 141 P.3d at 438-39.

Unlike in *Courbat*, Plaintiffs do assert that the Release violates a

statute -- HRS § 663-1.54, titled "recreational activity liability."[3]  Section 663-1.54

provides:

> (a) Any person who owns or operates a business
> providing recreational activities to the public, such as,
> without limitation, scuba or skin diving, sky diving,
> bicycle tours, and mountain climbing, shall exercise
> reasonable care to ensure the safety of patrons and the
> public, and shall be liable for damages resulting from

---

[3]  Section 663-1.54 was neither raised nor mentioned in *Courbat*.  Instead, *Courbat*
discussed HRS Ch. 663B, addressing civil actions involving injuries from equine activities.
111 Haw. at 264, 141 P.3d at 437.

negligent acts or omissions of the person which cause injury.

(b) Notwithstanding subsection (a), owners and operators of recreational activities shall not be liable for damages for injuries to a patron resulting from inherent risks associated with the recreational activity if the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks. No waiver shall be valid unless:

> (1) The owner or operator first provides full disclosure of the inherent risks associated with the recreational activity; and
>
> (2) The owner or operator takes reasonable steps to ensure that each patron is physically able to participate in the activity and is given the necessary instruction to participate in the activity safely.

The Standing Committee that drafted § 663-1.54 explained its purpose as follows:

> Your Committee finds that this measure is necessary to more clearly define the liability of providers of commercial recreational activities by statutorily invalidating inherent risk waivers signed by the participants. *Your committee further finds that these inherent risk waivers require providers to disclose known risks to the participant, but these waivers do not extend immunity to providers for damages resulting from negligence.* Thus, it is the intent of your Committee that this clarification in the law will appropriately reduce frivolous suits without increasing risks to participants.

Haw. Stand. Comm. Rep. No. 1537, 1997 Senate Journal, at 1476 (emphasis

added); *See also King v. CJM Country Stables*, 315 F. Supp. 2d 1061, 1067 (D. Haw. 2004) (providing detailed analysis of legislative history of § 663-1.54).

Thus, § 663-1.54 precludes waivers of liability for negligence, and allows waivers only for damages resulting from "inherent risks" that have been fully disclosed to the customer. And pursuant to § 663-1.54(c), "[t]he determination of whether a risk is inherent or not is for the trier of fact," meaning that the court cannot determine on summary judgment whether a written release constitutes a valid waiver of Defendant's liability in this action. *See also King*, 315 F. Supp. 2d at 1067 (determining that § 663-1.54(c)'s "statutorily-imposed genuine issue of fact precludes summary judgment as a matter of law").

Applying these principles here, *Courbat* does not address the validity of a waiver in light of HRS § 663-1.54, and therefore does not assist the court in determining whether Plaintiff's Release was a valid waiver of her negligence claims. Rather, HRS § 663-1.54 renders void the Release to the extent it seeks to waive Plaintiff's negligence claims. It is also a question of fact whether Defendant disclosed to Plaintiff the inherent risks of the ATV tour which may have caused her accident. *See* HRS § 663-1.54(c).

The court therefore DENIES Defendant's Motion for Summary Judgment to the extent it argues that Plaintiff's Release bars her negligence

claims.

## B.    Whether Plaintiff's Claims Are Barred by HRS Ch. 520

Defendant argues that Plaintiff's claims are barred by Hawaii's

Recreational Use Statute ("HRUS"), HRS Ch. 520, which "encourage[s] owners of

land to make land and water areas available to the public for recreational purposes

by limiting their liability toward persons entering thereon for such purposes."

HRS § 520-1.  Based on the following, the court rejects this argument.

The provisions of the HRUS, read together, make clear that the

limitation of a landowner's duty of care and liability does not extend to those who

are charged a fee to use the property.  For example, § 520-3 provides, in relevant

part:

> [A]n owner of land owes no duty of care to keep the
> premises safe for entry or use by others for recreational
> purposes, or to give any warning of a dangerous
> condition, use, structure, or activity on such premises to
> persons entering for such purposes . . . .

In turn, § 520-2 defines "recreational user" as "any person who is on or about the

premises that the owner of land either directly or indirectly invites or permits,

*without charge*, entry onto the property for recreational purposes." (Emphasis

added).  Section 520-4(a) similarly limits liability of landowners, and further

explicitly excludes from the limitation individuals who are charged to use the

property.  *See* HRS § 520-4(a)(3) (limiting liability of "an owner of land who either directly or indirectly invites or permits *without charge* any person to use the property for recreational purposes" (emphasis added)).

And to the extent HRUS is at all ambiguous, its legislative history confirms that it is not intended to limit liability for commercial activities.  For example, the Committee on Lands and Natural Resources explained: "The purpose of this bill is to limit the liability of landowners who permit persons to use their property for recreational purposes without charge. *This bill would not affect the landowners' common law duty of care towards* house guests, *business invitees* . . . ."  Sen. Stand. Comm. Rep. No. 534, in 1969 Senate Journal, at 1075 (emphases added); *see also* Hse. Stand. Comm. Rep. No. 760, in 1969 House Journal, at 914 ("This relief of liability is not unlimited as it does not apply to . . . situations where a fee is charged for the use of the land . . . .").

Based on HRUS' statutory language and legislative history, the Hawaii Supreme Court has held that "HRUS confers upon the 'owner' of land immunity from negligence liability to any person -- who is neither 'charged' for the right to be present nor a 'house guest' -- injured on the land while that person is using the owner's land for a 'recreational purpose.'"  *Crichfield v. Grand Wailea Co.*, 93 Haw. 477, 485, 6 P.3d 349, 357 (2000).  Thus, where the

16

individual is on the property for a commercial purpose, HRUS does not apply. *Id.* at 488, 6 P.3d at 360 (determining that plaintiff's assertions that she was on hotel property for lunch and not merely to view the landscaping raised a genuine issue of material fact as to whether HRUS applied); *Nam Soon Jeon v. 445 Seaside, Inc*., 2013 WL 431846, at *13 (D. Haw. Jan. 31, 2013) (rejecting argument that plaintiff was a "recreational user" of hotel pool where no fee was charged for the pool, yet plaintiff was a paying guest).

Applying these principles, the court has little difficulty finding that Defendant has failed to carry its burden of establishing that HRUS bars Plaintiff's claims -- HRUS does not apply in this case where Plaintiff was on a paid ATV tour offered by Defendant on its property.[4] The court therefore DENIES Defendant's Motion for Summary Judgment to the extent it argues that HRUS bars Plaintiff's claims.

///

///

///

---

[4] In Reply, Defendant makes a specious argument -- that Plaintiff's sole purpose for participating on the tour was for recreation. *See* Doc. No. 48, Def.'s Reply at 10. In making this argument, Defendant relies on *Crichfield*, which held that a person's subjective intent in being present on an owner's land is material to whether the person is a "recreational user" engaged in a "recreational purpose" at the time of the injury. 93 Haw. at 487, 6 P.3d at 359. Defendant's argument ignores the obvious -- Plaintiff paid for a tour of Defendant's ranch.

**C.    Whether Plaintiff Has Established a Lack of Unreasonable Harm to Support Her Premises Liability Claims**

Finally, Defendant argues that Plaintiff's premises liability claim fails because she failed to establish any unreasonable risk of harm posed by the property.

In general, the elements of Plaintiffs' negligence claims are (1) a duty requiring the defendant "to conform to a standard of conduct, for the protection of others against unreasonable risks," (2) a breach of that duty; (3) "[a] reasonably close causal connection between the conduct and the resulting injury," and (4) damages. *Knodle v. Waikiki Gateway Hotel, Inc*., 69 Haw. 376, 385, 742 P.2d 377, 383 (Haw. 1987). For a negligence claim based on premises liability, the Hawaii Supreme Court has held:

> if a condition exists upon the land which poses an
> unreasonable risk of harm to persons using the land, then
> the possessor of the land, if the possessor knows, or
> should have known of the unreasonable risk, owes a duty
> to the persons using the land to take reasonable steps to
> eliminate the unreasonable risk, or adequately to warn
> the users against it.

*Corbett v. Ass'n of Apartment Owners of Wailua Bayview Apartments*, 70 Haw. 415, 417, 772 P.2d 693, 695 (1989)). In other words, "an owner or occupant of the land will be liable for a plaintiff's injury if the owner or occupant was previously put on actual or constructive notice of an unreasonably unsafe

18

condition that caused the injury." *Campos v. United States*, 2008 WL 2230717, at

*5 (D. Haw. May 30, 2008) (citing *Harris v. State*, 1 Haw. App. 554, 557, 623

P.2d 446, 448 (1981)). "The owner or occupant is put on constructive notice of

the unsafe condition if it existed for such a period of time that the owner or

occupant should have been able to detect it through the exercise of reasonable

diligence." *Id.* (citing *Hascup v. City & County of Honolulu*, 2 Haw. App. 639,

640, 638 P.2d 870, 872 n.1 (1982)). "Ordinarily, issues of negligence are not

susceptible of summary judgment," and summary judgment is appropriate only

when "facts are undisputed or lend themselves to only one reasonable

interpretation or conclusion." *Rodriguez v. Gen. Dynamics Armament & Tech.*

*Prods.*, 696 F. Supp. 2d 1163, 1177 (D. Haw. 2010).

Defendant argues that Plaintiff's premises liability claim fails because

there is no evidence that dangerous conditions and/or obstacles existed in the area

where Plaintiff lost control of the ATV, and even if the trail posed an unreasonable

risk of harm, there is no evidence suggesting that Defendant knew or should have

known of the risk of harm. *See* Doc. No. 42-3, Def.'s Mot. at 19-20. Viewed in a

light most favorable to Plaintiff, the court finds that the facts lend themselves to

more than one reasonable interpretation and therefore preclude summary

judgment. In particular, Plaintiff was injured engaging in an activity that clearly

presented some risk -- ATV riding on ranch trails.  Given this activity, the court

cannot discern (and is not in a position to determine as a matter of law) whether

the trail posed an unreasonable risk of harm.[5]  Further, there is a genuine issue of

material fact whether Defendant was aware of the condition of the trail and the

presence of a tree where tours were regularly conducted on the ranch.[6]

The court therefore DENIES Defendant's Motion for Summary

Judgment on Plaintiff's premises liability claim.

///

///

///

///

///

///

---

[5]  Although Defendant presents copies of photographs of the trail, *see* Doc. No. 42-7, Def.'s Ex. C, they are of poor quality and unhelpful in determining the condition of the trail. Even if the photographs were of better quality, the court would not able to determine on summary judgment whether the trail posed an unreasonable risk for ATV riding.

[6]  In opposing summary judgment, Plaintiff argues that Defendant's subsequent acts of removing the tree Plaintiff hit and adding additional rocks to this part of the trail show that Defendant was aware of the trail conditions prior to the accident.  *See* Doc. No. 46, Pl.'s Opp'n at 23.  Neither party addresses whether such evidence is admissible pursuant to Federal Rule of Evidence 407 governing subsequent remedial measures, and the court need not rely on this evidence in denying the Motion for Summary Judgment.  *See also Grabau v. Target Corp.*, 2008 WL 616068, at *2 (D. Colo. Feb. 29, 2008) (excluding from trial as barred by Rule 407 evidence of subsequent corrective action offered to prove knowledge of a dangerous condition).

# V. **CONCLUSION**

Based on the above, the court DENIES Defendant's Motion for Summary Judgment on All Claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 7, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Mohler v. Kipu Ranch, LLC, et al.*, Civ. No. 13-00611 JMS-BMK, Order Denying Defendant Kipu Ranch Adventures, LLC's Motion for Summary Judgment on All Claims, Doc. No. 42